**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

INDEPENDENCE INSTITUTE,

      Plaintiff,

   v.                                 Civil Action No. 14-1500 (CKK)

FEDERAL ELECTION COMMISSION,

      Defendant.

**MEMORANDUM OPINION**
(October 6, 2014)

Plaintiff Independence Institute, a Colorado non-profit organization, brought this action

against Defendant Federal Election Commission ("FEC"), seeking declaratory and injunctive

relief declaring that the disclosure provisions of the Bipartisan Campaign Reform Act of 2002

("BCRA") are unconstitutional as applied to a specific radio advertisement that Plaintiff plans to

run before the November 4, 2014, federal elections. Presently before the Court are Plaintiff's

[3] Application for a Three Judge Court and Plaintiff's [5] Motion for Preliminary Injunction. In

the interest of expediting the resolution of this action, the parties agreed that the Court would

rule on the merits of the Complaint as opposed to the preliminary injunction. Upon consideration

of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court DENIES

---

[1] Compl., ECF No. [1] ("Compl."); Pl.'s Application for a Three Judge Court and Mem. in
Support, ECF No. [3] ("Pl.'s App."); Pl.'s Mot. for Prelim. Inj. and Mem. in Support, ECF
No. [5] ("Pl.'s Mot."); Joint Stipulation of the Parties and Order of the Court as to the Scope of
Pl.'s Allegations and Claims, ECF No. [13] ("Joint Stip."); Def. Federal Election Comm'n's
Opp'n to Pl.'s Application for a Three-Judge Court, ECF No. [16] ("Def.'s 3-Judge Opp'n");
Plaintiff's Reply Mem. on Application for a Three Judge Court, ECF No. [17] ("Pl.'s 3-Judge
Reply"); Def. Federal Election Comm'n's Mem. of Law in Opp'n to Pl.'s Mot. for Prelim. Inj.,
ECF No. [19] ("Def.'s Opp'n"); Brief *Amici Curiae* of Campaign Legal Center, Democracy 21

Plaintiff's motions. Plaintiff's claims are foreclosed by clear United States Supreme Court precedent, principally by *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010). *See id*. at 366-71. Having considered the merits of this dispute, the Court enters JUDGMENT for Defendant. Accordingly, this action is DISMISSED in its entirety.

## I. BACKGROUND

### A. Factual and Procedural Background

Independence Institute is a nonprofit corporation that "conducts research and educates the public on various aspects of public policy—including taxation, education policy, health care, and justice policy." Compl. ¶ 2. Independence Institute plans to produce a radio advertisement that will ask the current United States senators from Colorado, Mark Udall and Michael Bennet, to support the Justice Safety Valve Act.[2] *Id*. ¶¶ 3, 31, 32. Senator Udall is up for reelection on

---

and Public Citizen, Inc. in Support of Def. and in Opp'n to Pl.'s Mot. for Prelim. Inj., ECF No. [21] ("*Amici* Br."); and Pl.'s Reply, ECF No. [22] ("Pl.'s Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f). Moreover, holding a hearing would not be consistent with the Court's commitment to expediting these proceedings in light of the timing of the upcoming elections.

[2] The verbatim text of the proposed radio advertisement is as follows:

> Let the punishment fit the crime.
>
> But for many federal crimes, that's no longer true.
>
> Unfair laws tie the hands of judges, with huge increases in prison costs that help drive up the debt.
>
> And for what purpose?
>
> Studies show that these laws don't cut crime.
>
> In fact, the soaring costs from these laws make it harder to prosecute and lock up violent felons.
>
> Fortunately, there is a bipartisan bill to help fix the problem – the Justice Safety Valve Act, bill number S. 619.

November 4, 2014. *Id.* ¶¶ 31, 41. Plaintiff agrees that its planned advertisement meets BCRA's definition of an "electioneering communication" and that, therefore, the statute requires it to disclose contributors. *Id.* ¶ 4; Pl.'s Mot. at 4. However, Plaintiff claims that the disclosure requirement is overbroad as applied to the radio advertisement that it plans to run. Compl. ¶¶ 114, 129. In particular, Plaintiff argues that the disclosure requirements of BCRA section 201 are overbroad as applied because the advertisement is genuine issue advocacy rather than express advocacy or the functional equivalent thereof. *See* Pl.'s Mot. at 17, 22-23. Plaintiff also emphasizes that the Independence Institute is organized pursuant to section 501(c)(3) of the Internal Revenue Code and that the content of the advertisement is not pejorative towards Senator Udall. *Id.* at 18, 23. As discussed below, Plaintiff's arguments are unavailing.

Plaintiff brought this action seeking declaratory and injunctive relief with respect to the advertisement it plans to run. Plaintiff seeks to have the merits adjudicated by a three-judge court. Plaintiff also filed a motion for preliminary injunction because the 60-day window before the November election, during which BCRA's requirements apply, had already begun. In the interest of expediting the resolution of the case, the parties agreed to consolidate briefing on the preliminary injunction with briefing on the merits, relying initially on Plaintiff's merits arguments with respect to the preliminary injunction. Joint Stip. at 1-2. The parties further

---

It would allow judges to keep the public safe, provide rehabilitation, and deter others from committing crimes.

Call Senators Michael Bennet and Mark Udall at 202-224-3121. Tell them to support S. 619, the Justice Safety Valve Act.

Tell them it's time to let the punishment fit the crime.

Paid for by Independence Institute, I2I dot org. Not authorized by any candidate or candidate's committee. Independence Institute is responsible for the content of this advertising.

Compl. ¶ 35.

agreed, "in light of Plaintiff Independence Institute's agreement not to supplement its Motion for Preliminary Injunction (Docket No. 5) with supplemental substantive briefing or evidence, for the Court to consider Plaintiff's Motion for Preliminary Injunction as a Motion for Summary Judgment and to follow the briefing schedule" previously set by the Court with respect to the preliminary injunction. *Id*. The parties also stipulated that "this case presents an as-applied challenge to 52 U.S.C. § 30104(f)(1)-(2) based upon the content of the Independence Institute's intended communication, and not the possibility that its donors will be subject to threats, harassment, or reprisals." *Id*. at 1.

**B. Legal Background**

    **1. Statutory Framework**

    The Bipartisan Campaign Reform Act of 2002, 116 Stat. 81, amended the Federal Election Campaign Act of 1971 ("FECA"), as well as other statutory provisions. *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 114 (2003), *overruled on other grounds by Citizens United*, 558 U.S. at 310. In addition to other requirements, BCRA mandates certain disclosures pertaining to "electioneering communications." *See Citizens United*, 558 U.S. at 366. "An electioneering communication is defined as 'any broadcast, cable, or satellite communication' that 'refers to a clearly identified candidate for Federal office' and is made within 30 days of a primary or 60 days of a general election."[3] *Id.* at 321 (quoting 2 U.S.C. § 434(f)(3)(A), now codified at 52 U.S.C. § 30104(f)(3)(A)).

    Pursuant to BCRA section 201, "any person who spends more than $10,000 on electioneering communications within a calendar year must file a disclosure statement with the

---

[3] The definition is further specified by regulation. *See Citizens United*, 558 U.S. at 321. Plaintiff does not dispute that the advertisement at issue satisfies the statutory and regulatory criteria. *See* Pl.'s Mot. at 3-4.

FEC."[4] *Id.* at 366. "That statement must identify the person making the expenditure, the amount of the expenditure, the election to which the communication was directed, and the names of certain contributors." *Id.* The reporting of contributions is limited to "contributors who contributed an aggregate amount of $1,000 or more."[5] 52 U.S.C. § 30104(f)(2)(E), (F). In *McConnell*, the Supreme Court upheld section 201's disclosure provisions against a facial challenge. *See* 540 U.S. at 197. But the Supreme Court did not "foreclose possible future challenges to particular applications of that requirement." *Id.* at 199. In *Citizens United*, in an as-applied challenge, the Supreme Court upheld the section 201 disclosure requirement "as applied to the ads for the movie [*Hillary*] and to the movie itself." 558 U.S. at 367.

In addition, BCRA section 203 originally prohibited corporations and unions from spending general treasury funds to finance electioneering communications, as defined in the Act.[6] *McConnell*, 540 U.S. at 204. After having upheld this provision against a facial challenge in *McConnell*, *see id.* at 209, the Supreme Court invalidated the expenditure prohibition as related to corporations and unions in *Citizens United*, *see* 558 U.S. at 318-19. Even though section 203 is not at issue in this litigation, it provides the context for the case law that resolves this dispute.

---

[4] For the purposes of BCRA section 201, "persons" includes corporations and labor unions, including nonprofit corporations like Plaintiff. *See McConnell*, 540 U.S. at 194-95.

[5] For funds paid out of a segregated bank account, only contributors to that account must be disclosed. 52 U.S.C. § 30104(f)(2)(E). For other funds, disclosures are required only for "contributors who contributed . . . to the person making the disbursement." *Id.* § 30104(f)(2)(F). Although the parties dispute the ramifications of this distinction, the Court need not address it further because it is immaterial to the resolution of this action.

[6] "Section 203 of BCRA amends FECA § 316(b)(2) to extend this rule [prohibiting the spending of general treasury funds], which previously applied only to express advocacy, to all 'electioneering communications.'" *McConnell*, 540 U.S. at 204.

## 2. Three-Judge Court

Pursuant to BCRA section 403(a)(3), "any action [] brought for declaratory or injunctive relief to challenge the constitutionality of any provision of [the] Act . . . shall be heard by a 3-judge court," in accordance with 28 U.S.C. § 2284. 52 U.S.C. 30110 note. The statute leaves the district judge with "the vexing initial determination of whether an action is required to be heard and determined by a three-judge court." *Feinberg v. Federal Deposit Ins. Corp.*, 522 F.2d 1335, 1338 (D.C. Cir. 1975) (construing 28 U.S.C. § 2284). "A single district judge need not request that a three-judge court be convened if a case raises no substantial claim or justiciable controversy. . . . Constitutional claims may be regarded as insubstantial if they are 'obviously without merit,' or if their 'unsoundness so clearly results from the previous decisions of (the Supreme Court) as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.' " *Id.* at 1338-39 (citations omitted). *See Schonberg v. Fed. Election Comm'n*, 792 F. Supp. 2d 14, 17 (D.D.C. 2011) (applying the D.C. Circuit's interpretation of section 2284 in *Feinberg* to BCRA § 403(a)). The Court concludes that Plaintiff's challenge is "clearly foreclosed by Supreme Court precedent." *Rufer v. Fed. Election Comm'n*, --- F. Supp. 2d ---, Nos. 14-cv-837, 14-cv-853, 2014 WL 4076053, at * 1 (D.D.C. Aug. 19, 2014). Accordingly, based on the reasoning and conclusions stated in this opinion, the Court denies the application for a three-judge court and resolves the merits of this dispute today.

## II. DISCUSSION

This dispute can be distilled to the application of the Supreme Court's clear instructions in *Citizens United*: in no uncertain terms, the Supreme Court rejected the attempt to limit BCRA's disclosure requirements to express advocacy and its functional equivalent. *See* 558 U.S. at 369. Plaintiff in this case seeks the same relief that has already been foreclosed by *Citizens United*. Plaintiff's efforts to distinguish this challenge from that in *Citizens United* are futile.

Moreover, it is clear that the additional precedent that Plaintiff attempts to enlist provides no more assistance to it than does *Citizens United*. Accordingly, Plaintiff's arguments lack merit.

## A. *Citizens United*

In *Citizens United*, in a section that eight justices joined, the Supreme Court concluded that there was no constitutional defect in applying the disclosure requirements of BCRA section 201 to specific electioneering communications that were neither express advocacy nor the functional equivalent thereof.[7] *Citizens United*, 558 U.S. at 367-69. The Supreme Court used clear language without any explicit or implicit constraints:

> As a final point, Citizens United claims that, in any event, the disclosure requirements in § 201 must be confined to speech that is the functional equivalent of express advocacy. The principal opinion in [*Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 (2007),] limited 2 U.S.C. § 441b's restrictions on *independent expenditures* to express advocacy and its functional equivalent. Citizens United seeks to import a similar distinction into BCRA's *disclosure requirements*. We reject this contention.

*Id.* at 368-69 (citation omitted) (emphasis added). Despite this unambiguous language, Plaintiff attempts to argue that *Citizens United* does not determine the outcome of this case. Plaintiff first argues that this language was dicta and therefore not binding on this Court. Plaintiff next argues that, even if this language is binding, it does not govern the outcome of this challenge because *Citizens United* was an as-applied challenge addressing materially different facts. Specifically, Plaintiff offers what amounts to three distinctions: (i) that it is a 501(c)(3) organization while Citizens United is a 501(c)(4) organization; (ii) that its advertisement is not the functional equivalent of express advocacy while the ads in *Citizens United*, in Plaintiff's estimation, were

---

[7] " '[A] court should find that [a communication] is the functional equivalent of express advocacy only if [it] is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate.' " *Citizens United*, 558 U.S. at 324-325 (*quoting Fed. Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 559, 469-70 (2007)) (alterations in original).

the equivalent of express advocacy; and (iii) that its advertisement has no positive or negative references to a candidate while the advertisement in *Citizens United* referred to a candidate pejoratively. None of these distinctions have the effect Plaintiff desires, and *Citizens United* still governs this matter. The Court addresses these arguments in turn.

### 1. *Citizens United* as Binding Precedent

With respect to the argument that *Citizens United*'s discussion of disclosures is not binding, Plaintiff relies heavily on one opinion from the Seventh Circuit Court of Appeals, *Wisconsin Right to Life, Inc. v. Barland*, 751 F.3d 804 (7th Cir. 2014), which states that *Citizen United*'s discussion of disclosures was dicta.[8] *See* Pl. Mot. at 15; Pl. 3-Judge Reply at 2-3 (citing *Barland*, 751 F.3d at 836). In *Barland*, the Seventh Circuit panel notes, referring to the Supreme Court, that "the Court declined to apply the express-advocacy limitation to the federal disclosure and disclaimer requirements for electioneering communications" and concludes that "[t]his was dicta." 751 F.3d at 836.

But in the same opinion, the Seventh Circuit panel ultimately concludes that the discussion of disclosures in *Citizens United* is binding with respect to BCRA section 201. Immediately after the statement that the relevant portion of *Citizens United* was dicta, the court in *Barland* states that "the Supreme Court's dicta must be respected, and on the strength of this part of *Citizens United*, we said in [*Center for Individual Freedom v.*] *Madigan* that the 'distinction between express advocacy and issue discussion does not apply in the disclosure context.' " *Id*. (quoting *Center for Individual Freedom v. Madigan*, 697 F.3d 464, 484 (7th Cir. 2012)). Notwithstanding its comment regarding dicta, the Seventh Circuit panel agrees that, as a

---

[8] Plaintiff appears to have abandoned this argument in its Reply, focusing instead on showing that *Citizens United* is "distinct" from the facts of this case. Pl.'s Reply at 9; *see id*. at 9-17. Nonetheless, this opinion addresses both arguments for the sake of completeness.

result of the Supreme Court's discussion of disclosures in *Citizens United*, the express-advocacy limitation does not apply to the disclosure system established by BCRA.[9] *See id.*

Moreover, *Barland*'s categorization of the discussion of disclosures in *Citizens United* as dicta is based upon a misunderstanding. That categorization relies on the Seventh Circuit panel's finding that the "[Supreme] Court had already concluded that *Hillary* and the *ads* promoting it were the equivalent of express advocacy." *Id.* (emphasis added). But this statement is not supported by the Supreme Court's own language as it relates to the *Hillary* advertisements. Although the *Citizens United* Court had determined that *Hillary: The Movie* was "equivalent to express advocacy," *Citizens United*, 558 U.S. at 325, the Court had made no such determination with respect to the *Hillary* advertisements. Plaintiff does not even attempt to indicate where in *Citizens United* the Supreme Court held that the advertisements were the functional equivalent of

---

[9] After opining that *Citizen United*'s discussion of disclosures was dicta, the Seventh Circuit panel contrasted the disclosure regime in BCRA section 201 with the state disclosure scheme that it was considering in *Barland*:

> This aspect of *Citizens United* must be understood in proper context. The Court's language relaxing the express-advocacy limitation applies only to the specifics of the disclosure requirement at issue there. The Court was addressing the onetime, event-driven disclosure rule for federal electioneering communications, a far more modest disclosure requirement than the comprehensive, continuous reporting regime imposed on federal PACs, or even the less burdensome disclosure rule for independent expenditures. When the Court said that 'disclosure is a less restrictive alternative to more comprehensive regulations of speech,' *Citizens United*, 558 U.S. at 369, it was talking about the disclosure requirement for electioneering communications. In that specific context, the Court declined to apply the express-advocacy limiting principle. But nothing in *Citizens United* suggests that the Court was tossing out the express-advocacy limitation for all disclosure systems, no matter how burdensome.

*Barland*, 751 F.3d at 836 (citations omitted). Accordingly, the Seventh Circuit agrees that the "express-advocacy limitation" does not apply to the disclosure provisions challenged in this action.

express advocacy.[10] *See* Pl.'s Reply at 10. Given that the Supreme Court did not determine that the *Hillary* advertisements were the equivalent of express advocacy, its refusal to import the express advocacy limitation to the disclosure context was not dicta but a holding—a holding that ultimately encompasses the facts in this case.

Indeed, numerous other Circuit courts beyond the Seventh Circuit have determined that *Citizens United*'s language forecloses the suggestion that disclosure requirements must be limited to express advocacy and its functional equivalent. *See, e.g.*, *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 54-55 (1st Cir. 2011) ("We find it reasonably clear, in light of *Citizens United*, that the distinction between issue discussion and express advocacy has no place in First Amendment review of these sorts of disclosure-oriented laws.); *Vermont Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 132 (2d Cir. 2014) ("*Citizens United* removed any lingering uncertainty concerning the reach of constitutional limitations in this context. In *Citizens United*, the Supreme Court expressly rejected the 'contention that the disclosure requirements must be limited to speech that is the functional equivalent of express advocacy,' because disclosure is a less restrictive strategy for deterring corruption and informing the electorate." (quoting *Citizens United*, 558 U.S. at 369) (citation and footnotes omitted)); *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1016 (9th Cir. 2010) ("Given the Court's analysis in *Citizens United*, and *its holding* that the government may impose disclosure requirements on speech, the position that disclosure requirements cannot constitutionally reach issue advocacy is unsupportable.") (emphasis added). By contrast, Plaintiff can point to no Court of Appeals decision that has

---

[10] Even in the face of the assertions by Defendant and by *amici* that the Supreme Court opinion does not support such a conclusion, Plaintiff simply relies on the fact that the Seventh Circuit panel had erroneously conflated the movie and the advertisements in its analysis. *See* Pl.'s Reply at 10 (quoting *Barland*, 751 F.3d at 823). This Court cannot rely on a decision in the Seventh Circuit when the Supreme Court's own language contradicts the conclusion.

reached a contrary conclusion, including the Seventh Circuit.[11] Therefore, the Supreme Court's

conclusion in *Citizens United* with respect to disclosures under BCRA section 201 is binding

precedent.

### 2. Tax Status Is Immaterial

Independence Institute next argues that its status as a section 501(c)(3) organization

under the Internal Revenue Code, whereas Citizens United is a section 501(c)(4) organization,

requires a different result from *Citizens United*. But this is a distinction without a difference.

Most importantly, nothing in *Citizens United*'s discussion of disclosures of contributions cabins

the Supreme Court's holding to certain types of organizations. *See Citizens United* 558 U.S. at

367-70. Insofar as Plaintiff argues that the election disclosure requirements ought to be different

for section 501(c)(3) organizations and section 501(c)(4) organizations because the tax code

differentiates among them with respect to disclosures, this argument has no basis. Neither type of

nonprofit organization is obligated by federal tax law to disclose donor information. *See* 26

U.S.C. § 6104(d)(3)(A); *Amici* Br. at 22-23.

Plaintiff also points to the Supreme Court's statement that "Citizens United has been

disclosing its donors for years" while the Independence Institute has not. Pl.'s Mot. at 18.

However, the purpose of the Supreme Court's statement was only to note that Citizens United

had "identified no instance of harassment or retaliation" in its years of disclosing donors, thus

defeating the argument that it could not be mandated to disclose because of "a reasonable

probability that the group's members would face threats, harassment, or reprisals if their names

---

[11] Plaintiff attempts to show that the cases from other circuits on which Defendant relies are
distinguishable from the facts in this as-applied challenge. *See* Pl.'s Reply at 13-15. But, putting
aside the merits of Plaintiff's attempt to distinguish these cases, Plaintiff does not address the
fact that these opinions treat the Supreme Court's clear conclusion with respect to disclosures as
binding.

were disclosed." *Citizens United*, 558 U.S. at 370 (citing *McConnell*, 540 U.S. at 198). However, such a probability is not an issue in this action because the parties have stipulated to that effect. Joint Stip. at 1. Accordingly, the Supreme Court's statement that Citizens United had been disclosing donors for years does not suggest a different outcome for the Independence Institute.

Ultimately, Plaintiff's effort to draw a line between different types of nonprofit organizations is not supported by any citation to authority that such a distinction would be required by the First Amendment. There is no reason to conclude that *Citizens United*'s clear refusal to import the express advocacy-issue advocacy distinction into the disclosure context should be limited to advocacy by certain types of nonprofit organizations.[12]

### 3. Categorization of Advertisements as Express Advocacy or Issue Advocacy Is Immaterial

Plaintiff next argues that "*Citizens United* is distinct because it contemplated advertisements which could be fairly characterized as the functional equivalent of express advocacy." Pl.'s Reply at 9. Even aside from the merits of this characterization of the advertisement in *Citizens United*, this argument cannot prevail. When considering Citizens United's advertisements, the Supreme Court refused to draw a line between express advocacy and issue advocacy in the BCRA disclosure context. *Citizens United*, 558 U.S. at 368-69. In plain language, the Supreme Court stated that whether an electioneering communication is

---

[12] Plaintiff is correct that the Federal Election Commission had promulgated a regulation in 2003 that exempted 501(c)(3) organizations from the disclosure requirements in section 201. *Shays v. Fed. Election Comm'n*, 337 F. Supp. 2d 28, 38, 125 (D.D.C. 2004), *aff'd* 414 F.3d 76 (D.C. Cir. 2005). Plaintiff is also correct that this regulation failed review pursuant to the Administrative Procedure Act because the agency "failed to conduct a 'reasoned analysis' " as required. *Id*. at 127. But the Court's conclusion in *Shays* does not support the assumption that *Citizens United*'s holding was implicitly limited to certain types of organizations. *See id*. at 128 (finding fault with the FEC's failure to consider potential problems that might emerge by effectively delegating the enforcement of election law to the IRS). *See also Amici* Br. at 11-13.

express advocacy or issue advocacy does not determine whether BCRA's disclosure requirement can be lawfully applied. Accordingly, even if it were clear that the advertisements in *Citizens United* were express advocacy and the one in this case were issue advocacy, the Supreme Court's holding in *Citizens United* would nonetheless resolve this dispute.[13]

In an attempt to counter Defendant's argument that the advertisements at issue in *Citizens United* were not, in fact, express advocacy, Plaintiff adopts another approach. Plaintiff looks to *Citizens United*'s reference to the *Hillary* advertisements as advocating a commercial transaction, in other words watching *Hillary: The Movie*. Pl.'s Reply at 11-12. Plaintiff argues that, if anything, this reference suggests that the *Hillary* advertisements deserved the reduced First Amendment protections afforded commercial speech. *See id*. This reference cannot be excised from its context. Responding to an argument that "an informational interest" did not apply to the *Hillary* advertisements, the Supreme Court concluded: "Even if the ads only pertain to a commercial transaction, the public has an interest in knowing who is speaking about a candidate shortly before an election. Because the informational interest alone is sufficient to justify application of § 201 to these ads, it is not necessary to consider the Government's other asserted interests." *Citizens United*, 558 U.S. at 369. In other words, even though the advertisement encourages someone to watch the movie rather than vote for a candidate, the public interest still supports disclosure of "who is speaking about a candidate." In no sense does this language imply that the Supreme Court determined that this speech deserved only the lesser

---

[13] Moreover, the Court doubts that the advertisements in *Citizens United* could satisfy the strict standard for being considered the functional equivalent of express advocacy. *See Citizens United*, 558 U.S. at 324-25 ("[A] court should find that [a communication] is the functional equivalent of express advocacy only if [it] is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." (quoting *Fed. Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 469-70 (2007)) (alterations in original)).

First Amendment protections of commercial speech, "that is, expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561 (1980). In any event, with respect to Plaintiff's attempt to distinguish its advertisement from that of Citizens United, the reference to a commercial transaction does not alter the Supreme Court's clear conclusion: whether speech is express advocacy or issue advocacy does not affect the lawful applicability of BCRA's disclosure requirements.

### 4. "Pejorative" Tone of the *Hillary* Advertisements Is Immaterial

Plaintiff next argues that *Citizens United*'s clear conclusion with respect to BCRA's disclosure requirements ought to be limited to advertisements like the ones before the Supreme Court in that case, which spoke "pejoratively" about a candidate, rather than "genuine issue speech," as Plaintiff characterizes its proposed ad. *See* Pl.'s Reply at 14, 15-16. The Court does not disagree that the *Hillary* advertisements could be considered critical of then-candidate Hillary Clinton, while the advertisement in this action, *on its face*, says nothing positive or negative about a candidate for Federal office. But this is a distinction without a difference. Notwithstanding *Citizen United*'s two references to the advertisements as pejorative, the language in *Citizens United* does not suggest that the pejorative nature of the advertisements in any way was important to the conclusion with respect to disclosures. The disclosures holding is neither explicitly nor implicitly limited to certain types of advertisements. *See Citizens United*, 558 U.S. at 368-69 ("Citizens United seeks to import a similar distinction into the BCRA's

disclosure requirements. We reject this contention."). Examining the two references in context confirms that the disclosure discussion is not limited by those references.[14]

In introducing the factual background of the case, the Supreme Court, within the first pages of the opinion, describes the advertisements: "Each ad includes a short (and, in our view, pejorative) statement about Senator Clinton, followed by the name of the movie and the movie's Website address." *Id.* at 320. This reference is separated from the discussion of the disclosure requirements by approximately 47 pages of the United States Reports, and nothing in either portion of the opinion suggests that the former reference is imported into the latter discussion. Moreover, the parenthetical phrasing of that reference suggests an aside rather than a core element of the Supreme Court's legal analysis.

When the Supreme Court turns to its analysis of the disclosure and disclaimer requirements, it describes the advertisements factually once again: "The ads fall within BCRA's definition of an 'electioneering communication': They referred to then-Senator Clinton by name shortly before a primary and contained pejorative references to her candidacy." *Id*. at 368. In fact, the quoted language pertains to the discussion of BCRA section 311's disclaimer requirements, not section 201's disclosure requirements. Even though the discussions of section 311 and section 201 are located in the very same section of the opinion, the text of the opinion does not even hint that the Supreme Court meant to limit the disclosures holding by the adjective "pejorative."

Moreover, Plaintiff's claim that "Justice Kennedy use[d] the word 'pejorative' in every instance in which the Court discusses the ads for *Hillary: The Movie*," Pl.'s Reply at 15, does not

---

[14] Notwithstanding Plaintiff's assertion to the contrary, *see* Pl.'s Mot. at 16, these two references also do not suggest that the *Citizens United* Court considered the *Hillary* ads to be the functional equivalent of express advocacy.

withstand scrutiny. Variations on the word "advertisement" show up in Justice Anthony Kennedy's opinion well over twenty times. Only the two times discussed in this section does he use the word pejorative. In sum, while the *Hillary* advertisements may very well have been pejorative in a way that Plaintiff's advertisement is not, there is nothing in *Citizens United* limiting the disclosures holding to electioneering communications that are pejorative (or, alternatively, complimentary) on their face.

## B. Alternative precedent

Arguing that *Citizens United* does not determine the outcome of this case, Plaintiff relies on alternative Supreme Court precedent to assert that the application of BCRA section 201's disclosure requirements to its advertisement is unconstitutional. In particular, Plaintiff cites to *Buckley v. Valeo*, 424 U.S. 1 (1976), and *Federal Election Commission v. Wisconsin Right to Life, Inc.* ("*WRTL II*"), 551 U.S. 449 (2007), both decided prior to *Citizens United*, to argue that section 201's disclosure requirements may be applied constitutionally only to communications that contain express advocacy, or its functional equivalent. In fact, those cases do not indicate that result. Because *Citizens United* does foreclose Plaintiff's claim, the other cases Plaintiff cites are at best background. Even so, examining them reinforces the conclusion that they do not suggest a different outcome from *Citizens United*.

### 1. *Buckley v. Valeo*

Plaintiff primarily relies on *Buckley v. Valeo*, 424 U.S. 1 (1976), which resolved a facial challenge to the Federal Election Campaign Act ("FECA"), to argue that, in the absence of *Citizens United*, *Buckley*'s distinction between express advocacy and issue advocacy resurfaces in the context of the disclosure requirements of BCRA section 201. *See* Pl.'s Mot. at 10. However, that dichotomy emerged only as part of the *Buckley* Court's analysis of a particular

statute, FECA (BCRA's predecessor), that is distinguishable from BCRA. Furthermore, the state

interests in favor of disclosure that were highlighted in *Buckley*, in fact, support the disclosure

requirements challenged in this case.

In upholding BCRA's disclosure requirements against a facial challenge,[15] *McConnell*

explains why Plaintiff's reliance on *Buckley* is unavailing. *See* 540 U.S. at 196. *First*, contrary to

Plaintiff's contention, *Buckley* actually supports BCRA's disclosure requirements. The

*McConnell* Court emphasized that

> the important state interests that prompted the *Buckley* Court to uphold FECA's
> disclosure requirements—providing the electorate with information, deterring
> actual corruption and avoiding any appearance thereof, and gathering the data
> necessary to enforce more substantive electioneering restrictions—apply in full to
> BCRA. Accordingly, *Buckley* amply supports application of FECA § 304's
> disclosure requirements to the *entire range* of 'electioneering communications.' "

*Id.* (emphasis added). This language prevents Plaintiff from wielding *Buckley* as a sword against

BCRA's disclosure requirements. *McConnell*'s status as a facial challenge is not to the contrary:

the Supreme Court's understanding of the relevant case law, on which it relied in upholding the

statute against that facial challenge, is unambiguous and directly contradicts Plaintiff's argument.

Second, *McConnell* explains that *Buckley* did not introduce a division between express

advocacy and issue advocacy as a constitutional matter, as Plaintiff suggests:

> [A] plain reading of *Buckley* makes clear that the express advocacy limitation, in
> both the expenditure and the disclosure contexts, was the product of statutory
> interpretation rather than a constitutional command. In narrowly reading the
> FECA provisions in *Buckley* to avoid problems of vagueness and overbreadth, we

---

[15] *McConnell* forthrightly "rejected the notion that the First Amendment requires Congress to
treat so-called issue advocacy differently from express advocacy." *Id.* at 194. The Court need not
determine the effective scope of this language—given that *McConnell* rejected a facial challenge
but did "not foreclose possible future challenges to particular applications of that requirement"—
because *Citizens United* came to the same conclusion in an as-applied challenge that
encompasses the action before the Court now. *McConnell*, 540 U.S. at 199.

nowhere suggested that a statute that was neither vague nor overbroad would be required to toe the same express advocacy line.

*Id*. at 191-92. *Buckley*'s division between express advocacy and issue advocacy emerged from the Supreme Court's reading of a particular statute—one notably different from BCRA—in order to avoid constitutional defects with the statute. *McConnell* further explains how the *Buckley* Court derived the express advocacy test and applied it to the FECA disclosures requirements, demonstrating that the Supreme Court did not fashion the test as a general constitutional rule:

> In *Buckley*, we began by examining then–18 U.S.C. § 608(e)(1) (1970 ed., Supp. IV), which restricted expenditures " 'relative to a clearly identified candidate,' " and we found that the phrase " 'relative to' " was impermissibly vague. We concluded that the vagueness deficiencies could "be avoided only by reading § 608(e)(1) as limited to communications that include explicit words of advocacy of election or defeat of a candidate." We provided examples of words of express advocacy, such as " 'vote for,' 'elect,' 'support,' . . . 'defeat,' [and] 'reject,' ", and those examples eventually gave rise to what is now known as the "magic words" requirement.

> We then considered FECA's disclosure provisions, . . . , which defined " 'expenditur[e]' " to include the use of money or other assets " 'for the purpose of . . . influencing' " a federal election. Finding that the "ambiguity of this phrase" posed "constitutional problems," we noted our "obligation to construe the statute, if that can be done consistent with the legislature's purpose, to avoid the shoals of vagueness." "To insure that the reach" of the disclosure requirement was "not impermissibly broad, we construe[d] 'expenditure' for purposes of that section in the same way we construed the terms of § 608(e)—to reach only funds used for communications that expressly advocate the election or defeat of a clearly identified candidate."

*McConnell*, 540 U.S. at 190-91 (quoting *Buckley*, 424 U.S. at 40-44, 77-78, 80) (citations omitted) (alterations in original). The line *Buckley* drew emerged from the particular statute the Supreme Court was considering—a statute that suffered from serious vagueness problems, unlike BCRA—not from a general constitutional command.

Plaintiff cites the caveat in *McConnell*'s conclusion that the express advocacy line was the product of statutory construction, *see id*. at 192 ("[W]e nowhere suggested that a statute that was neither vague nor overbroad would be required to toe the same express advocacy line"), to

argue that this is such a case that would require the statutory construction "to toe the same express advocacy line." Pl.'s Reply at 7-8. While Plaintiff does not claim that BCRA presents the vagueness problems addressed with respect to FECA, *see id*. at 6, Plaintiff asserts that BCRA's disclosure requirements are overbroad, arguing that this opens the door to importing *Buckley*'s statutory construction to the section 201 disclosure requirements, *id.* at 7. However, implicit in the caveat to which Plaintiff cites is that BCRA is not such a vague or overbroad statute. *See McConnell*, 551 U.S. at 191-92. Indeed, *McConnell* resolved the overbreadth question with regard to BCRA section 201 over ten years ago. *See* 540 U.S. at 190-94; *cf. WRTL II*, 551 U.S. at 476 n.8 ("[I]n deciding this as-applied challenge, we have no occasion to revisit *McConnell*'s conclusion that the statute is not facially overbroad.") The caveat on which Plaintiff relies falls away, leaving *Buckley*'s statutory construction inapplicable to BCRA.[16] Accordingly, Plaintiff cannot rely on *Buckley* to argue that the Constitution requires limiting disclosures under BCRA section 201 to express advocacy and its functional equivalent.

In addition, Plaintiff cites *Buckley* to show that disclosure requirements are subjected to exacting scrutiny. *See* Pl.'s Reply at 2. This proposition is unremarkable, and, indeed, this is the standard that *Citizens United* applied. *See Citizens United*, 558 U.S. at 366-67 (quoting *Buckley*, 424 U.S. at 64, 66) ("The Court has subjected these requirements to 'exacting scrutiny,' which

---

[16] Insofar as Plaintiff is trying to assert that the disclosure requirements are "overbroad" as applied to its advertisement, Compl. ¶ 129, as opposed to merely unconstitutional in these particular circumstances, Plaintiff is conflating as-applied challenges and facial challenges. Overbreadth, as *McConnell* uses it, is fundamentally a facial claim. *See New York v. Ferber*, 458 U.S. 747, 769 (1982) ("The scope of the First Amendment overbreadth doctrine, like most exceptions to established principles, must be carefully tied to the circumstances in which facial invalidation of a statute is truly warranted."); *Osborne v. Ohio*, 495 U.S. 103, 112 (1990) ("[W]e have repeatedly emphasized that where a statute regulates expressive conduct, the scope of the statute does not render it unconstitutional unless its overbreadth is not only 'real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' "); Erwin Chemerinsky, *Constitutional Law: Principles and Policies* § 11.2.2. (4th ed. 2011).

requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest."); *see also id.* at 369. Accordingly, applying this unremarkable proposition yields the same outcome as in *Citizens United*: BCRA section 201's disclosure requirements satisfy the requirements of exacting scrutiny.

In sum, *Buckley* does not support the result that Plaintiff seeks. First, the state interests discussed by *Buckley* supporting disclosures in the context of FECA also support disclosures in the context of BCRA. Second, *Buckley*'s introduction of the express advocacy test was limited to the predecessor statute before the Supreme Court at the time. And, third, while *Buckley* does stand for the requirement that exacting scrutiny must be applied to disclosure requirements, *Citizens United* applied exactly that standard—with a result that contradicts what Plaintiff is seeking in this case.[17]

### 2. *Federal Election Commission v. Wisconsin Right to Life, Inc.* (*WRTL II*)

Four years after *McConnell*, the Supreme Court considered an as-applied challenge to BCRA section 203, which barred corporations from expenditures on electioneering communications, in *WRTL II*. 551 U.S. at 455-56. The Supreme Court concluded that "the interests held to justify restricting corporate campaign speech or its functional equivalent do not justify restricting issue advocacy," and concluded that the expenditure bar in BCRA section 203 was unconstitutional as applied to the advertisements at issue in that action. *Id.* at 457. While

---

[17] Plaintiff also relies on the D.C. Circuit *en banc* court's analysis in *Buckley*, specifically its holding regarding a provision that was not appealed to the Supreme Court. *See* Pl.'s Mot. at 18-20 (citing *Buckley v. Valeo*, 519 F.2d 821 (D.C. Cir. 1975) (en banc), *aff'd in part, rev'd in part*, 424 U.S. 1 (1976). In particular, Plaintiff cites to the D.C. Circuit's discussion of a provision of FECA requiring certain individuals to file reports as if they were political committees. *See id.* at 18-19 (citing *Buckley*, 519 F.2d at 869-70). That provision bears no resemblance to the disclosure requirements in BCRA section 201 and sheds no light on the Court's consideration of them. Moreover, insofar as the *en banc* opinion is at odds with subsequent Supreme Court precedent, including *Citizens United*, the *en banc* opinion is superseded by that later precedent.

Plaintiff cites *WRTL II* "as strong authority for the continued vitality of *Buckley*'s separation of issue speech from express advocacy," Pl.'s Mot. at 14, *WRTL II* does not suggest that distinction is relevant with respect to disclosures—regardless of the asserted vitality of that distinction with respect to expenditures.

Plaintiff's attempt to apply the reasoning of *WRTL II* to *disclosure requirements* fails. *WRTL II* was an as-applied challenge to the regulation of expenditures pursuant to BCRA section 203 while only the disclosure requirements in section 201 are challenged in this action. Plaintiff acknowledges as much. *See id.*; Pl.'s Reply at 5. Indeed, the Plaintiff's argument with respect to *WRTL II* is precisely the argument rejected in *Citizens United*. *See Citizens United*, 558 U.S. at 368-69 ("The principal opinion in *WRTL* [*II*] limited 2 U.S.C. § 441b's restrictions on independent expenditures to express advocacy and its functional equivalent. Citizens United seeks to import a similar distinction into BCRA's disclosure requirements. We reject this contention."). As explained above, *Citizens United* is binding, and it forecloses the application of the restrictions applied in *WRTL II* to this case. In sum, *WRTL II* provides no authority to support importing the express advocacy (or functional equivalent) test to the disclosure requirements of BCRA section 201.

## IV. CONCLUSION

Plaintiff's claim is squarely foreclosed by *Citizens United*, in which the Supreme Court refused to import the distinction between express advocacy and its functional equivalent and issue advocacy to the disclosure requirements of BCRA section 201. In all relevant ways, the advertisement that Independence Institutes proposes to run is similar to the *Hillary* advertisements considered by the Supreme Court in *Citizens United*. That Independence Institute is subject to section 501(c)(3) of the tax code, while Citizens United is subject to

section 501(c)(4), does not provide a basis for a different result. Neither does the fact that the *Hillary* advertisements were arguably pejorative while Plaintiff's advertisement is, on its face, neither complimentary nor pejorative with respect to any candidate. Just as Citizens United's as-applied challenge to the disclosure requirements of section 201 failed, so too does Plaintiff's as-applied challenge to those same disclosure requirements. Moreover, the other precedent that Plaintiff seeks to enlist in its cause is either inapposite or, upon examination, actually supportive of the application of the disclosure requirements of BCRA in these circumstances.

For the foregoing reasons, Plaintiff's [3] Application for a Three Judge Court is DENIED. Pursuant to the parties' agreement to consolidate briefing on the merits with the preliminary injunction briefing, the Court enters JUDGMENT in favor of Defendant.[18] Therefore, Plaintiff's [5] Motion for Preliminary Injunction is MOOT. This action is DISMISSED in its entirety. An appropriate Order accompanies this Memorandum Opinion.

Dated: October 6, 2014

/s/<br>
COLLEEN KOLLAR-KOTELLY<br>
United States District Judge

---

[18] Even without either a formal cross-motion for summary judgment by Defendant, the Court can award judgment to Defendant. *See Henok v. Chase Home Fin., LLC*, 922 F. Supp. 2d 110, 117 (D.D.C. 2013) *aff'd in part sub nom. Henok v. JPMorgan Chase Bank, N.A.*, 13-7036, 2013 WL 4711675 (D.C. Cir. Aug. 2, 2013); 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2720 (3d ed. 1998) ("The grant of judgment for the nonmoving party clearly is proper if both sides agree that there are no material fact issues and join in the request that the case be decided, for the moving or the nonmoving side, on the basis of a motion for judgment made by only one of them.); Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may (1) grant summary judgment for a nonmovant"). The parties agreed that the Court would adjudicate this case on the merits without the submission of additional evidence, and there are no disputes as to material facts. Joint Stip. at 1-2. In addition, even without a formal motion, Defendant has requested that the Court award judgment to it. *See* Def.'s Opp'n at 2.